UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Pearl Seas Cruises, LLC,<br>    *Plaintiff,* | Civil No. 3:10cv1801 (JBA) |
| *v.* | |
| Irving Shipbuilding Inc.,<br>    *Defendant.* | March 30, 2012 |

RULING ON DEFENDANT'S MOTION TO DISMISS

Plaintiff, Pearl Seas Cruises, LLC ("PSC") seeks a declaratory judgment from a breach of contract for the construction of an overnight passenger cruise ship, and seeks restitution or damages in excess of $40,000,000. Defendant Irving Shipbuilding Inc. ("ISI") moves [Doc. # 33] to dismiss the complaint under Fed. Civ. P. 12(b)(6) and 12(b)(2). For the reasons that follow, Defendant's motion will be granted and the case will be dismissed without prejudice.

I.     Procedural Background

This is Plaintiff's third lawsuit pertaining to the same on–going arbitration process in which the parties have been engaged since April 2008. The issues raised in Plaintiff's complaint and in Defendant's motion to dismiss differ little in substance from the matter addressed in the Court's February 2011 ruling. *See Pearl Seas Cruises, LLC v. Irving Shipbuilding Inc.* (*"Pearl Seas I"*), No. 3:10cv1294(JBA), 2011 WL 577333 (D. Conn. Feb. 9, 2011). There, Plaintiff filed a petition seeking to vacate the July 2, 2010 Partial Final Arbitration Award pursuant to the Federal Arbitration Act, and this Court ruled that the claim was not justiciable as it was only an interim award. (*Id.* at *9.)  In August 2011, the Court ruled on Plaintiff's second petition to vacate a partial final award, dismissing the action on the ground that a partial final award was not justiciable, as it was not a final

arbitration award. *See   Pearl Seas Cruises, LLC v. Irving Shipbuilding Inc.*, No. 3:11cv201(JBA) ("*Pearl Seas II*"), 2011 WL 3475469, at *5–6. Defendant has moved to dismiss on the same grounds of non–justiciability, though Plaintiff contends that it has now raised a justiciable claim.

### A.   Factual Allegations

The Complaint alleges that the Contract negotiated between the two parties provided for ISI to construct a vessel that meets the requirements of the international Convention for the Safety of Life at Sea ("SOLAS"), has all regulatory approvals needed for operating, including Lloyd's Register Classification, is built under the rules and regulations and flagged by the Republic of the Marshall Islands, and has regulatory approvals from the U.S. Coast Guard. (Compl. [Doc. # 1] at 1.) Upon delivery of the vessel, the Contract requires that the vessel "(a) have all regulatory approvals needed for operation (Specification 1007) and (b) be ready for immediate service (Specification 1016)." (*Id.* ¶ 8.) "Classification" is the process by which a ship is inspected to make sure it complies with safety regulations, and "is a legal and practical requirement before a ship can operate and/or carry passengers internationally." (*Id.*) The parties designated Lloyd's Register as the Classification Society for the Vessel (Contract § 1.3.1).

The Contract contains a "Dispute and Arbitration" section, providing for arbitration in New York (Contract § 14.2.1) in accordance with the Rules of the Society of Maritime Arbitration, Inc. (Contract § 14.2.3). Section 14.1.1.2 of the Contract states:

> Any dispute concerning the Vessel's compliance or noncompliance with the rules and regulations of the Classification Society or other regulatory body shall be referred to the Classification Society or other regulatory body, as the case may be, the decision of which shall be final and binding upon the parties hereto.

As to all other disputes, the Contract provides: "All other disputes including disputes relating to the validity, interpretation, performance or enforcement of this Contract shall be referred to arbitration by three arbitrators as herein provided." (Contract § 14.1.1.3.)

An arbitration panel was constituted in 2008 to resolve certain disputes. ISI appointed Louis P. Sheinbaum as an arbitrator, PSC appointed David A. Nourse as an arbitrator, and the two arbitrators then appointed John M. Woods as the third arbitrator and Chairman. (Compl. ¶ 16.) PSC rejected the Vessel on May 8, 2009, "due to its physical defects, including documented violations of SOLAS from safety regulations, Irving's resulting failure to secure Classification Society approval, and the lack of flag state registration and other regulatory approvals, including that of the U.S. Coast Guard." (Compl. ¶ 21.)

The regulatory bodies charged with certifying the vessel have not certified it as complying with the rules and regulations of the Classification Society. (Compl. ¶ 23.) Plaintiff alleges that the Marshall Islands made a "final written decision" in August 2009 informing the parties that the Marshall Islands "declined to register the vessels under the Marshall Islands flag" due to material safety issues. (*Id.* ¶ 24.) Lloyd's Register has identified "numerous physical defects in the Vessel," and has "required their correction and still failed to issue classification certifications." (*Id.* ¶ 25.) The U.S. Coast Guard and the Republic of the Marshall Islands have "identified SOLAS violations, including deficiencies in the vital structural fire protection throughout the entire Vessel."

PSC also alleges that "While Pearl Seas' Petition [to vacate an Arbitration Award dated July 2, 2010] was pending before this Court, the Majority arbitrators issued an additional Partial Final Award dated November 9, 2010, expressly stating that the Panel has

not considered issues relating to Class or regulatory approval and was leaving those issues for determination by the Court." (Compl. at 2, ¶ 29.)[1]

> B.    Relief Sought

In Count One, PSC seeks a declaratory judgment that "the rulings of Lloyd's Register that the M/V Pearl Mist did not comply with Lloyd's Register's requirements for Class Certificates, as evidenced by the fact that no final or provisional Certificates were granted as of May 2009 or have been granted up through the date of this action, are final and binding." (*Id.* ¶ 31.) In Count Two, PSC seeks a declaratory judgment that "the rulings from the Republic of the Marshall Islands that the M/V Pearl Mist does not comply with its requirements for Flag State approval, as evidenced by the fact that no such approval was granted as of May 2009 or has been granted up through the date of this action, are final and binding." (*Id.* ¶ 33.) In Count Three, PSC seeks "a judgment finding Irving in material and fundamental breach of the Contract," "a judgment rescinding the Contract and awarding damages in the amount of no less than $30,000,000 plus interest," and "a judgment canceling the Contract and awarding damages in the amount of no less than $30,000,000 plus interest." (*Id.* ¶ 38.)

_____

[1] The Panel has clarified that when it stated that it was "leaving the regulatory question to be determined by the Court in the action which has been commenced by Pearl Seas" (Nov. 9, 2010 Partial Final Award at 2), it was speaking specifically of the "allegations and/or issues set forth in Pearl Seas' Verified Petition to Vacate of August 11, 2010," (*see* Nov. 19, 2010 Letter of Clarification, Ex. 6 to Wenger Dec. [Doc. # 35].) However, as the Court has determined that this action should be dismissed on the grounds of non–justiciability, the Court will not address the merits of these allegations or the letter of clarification.

II.     Discussion

In light of this Court's February 2011 and August 2011 rulings dismissing Plaintiff's petitions to vacate the arbitral award and claim for declaratory relief as non–justiciable, Plaintiff seeks to distinguish this complaint and argues that its particular claims for relief "are for the Court to decide and are not arbitrable." (Pl.'s Mem. Opp'n [Doc. # 41] at 7.) Addressing the Court's ruling that there was an "absence of an independent claim the Court can review" in the February 2011 ruling, *Pearl Seas I*, 2011 WL 577333 at *9, Plaintiff claims that "the complaint in this matter raises the independent claim which was missing in the prior case", and that the pending motion raises an arbitrability issue, specifically, the "scope of the specific carveout," which is "ripe for decision." (Mem. Opp'n [Doc. # 41] at 5, 7.)

In support of its motion to dismiss, Defendant maintains that the broad arbitration agreement precludes Plaintiff's claims, Section 14.1.1.2 of the Contract does not confer decision–making authority on the Court, and that the relief sought by Plaintiff is not justiciable.

A.     The Arbitration Agreement is Broad

Asserting that the Complaint here raises the "independent claim" that the previous cases were lacking, PSC devotes the entirety of its briefing to its "arbitrability" argument. As previously determined by this Court, the arbitration agreement contained in Contract § 14.1.1.3 is a "broad clause," that gives rise to a "presumption of arbitrability," *Pearl Seas I*, 2011 WL 577333 at *9 n.3, and "arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001). The federal policy "generally favor[ing] arbitration," *id.*, "is even

stronger in the context of international business transactions where arbitral agreements promote the smooth flow of international transactions by removing the threats and uncertainty of time–consuming and expensive litigation." *Rep. of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011).

PSC argues that "because the claims asserted in the Complaint are not subject to arbitration, the motion to dismiss should be denied," and as its complaint raises an "arbitrability" issue, it is should be considered by the Court. The Supreme Court has distinguished between "'questions of arbitrability,' which are to be resolved by the courts unless the parties have clearly agreed otherwise, and other 'gateway matters,' which are presumptively reserved for the arbitrator's resolution." *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n Local 38*, 351 F.3d 43, 45 (2d Cir. 2003) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002)). A "question of arbitrability" is "a term of art covering "dispute[s] about whether the parties are bound by a given arbitration clause" as well as "disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Rep. of Ecuador*, 638 F.3d at 393 (quoting *Howsam*, 537 U.S. at 84).

Specifically, Plaintiff argues that because the Contract here contains an arbitration clause *and* a "carveout" from that clause, this by nature creates an ambiguity which would require a court to consider the issue of arbitrability. (Pl.'s Mem. Opp'n at 7 (quoting *Katz v. Feinberg*, 290 F.3d 95, 97 (2d Cir. 2002).) The contract at issue in *Katz* contained a "valuation clause," which assigned determination of the "Final Share Purchase Price," to the company's long–standing accountants and specified that "[t]he determination by the Company Accountants of the final purchase price of the shares . . . shall be final and binding

on Seller and Buyer and shall not be the subject to any appeal, arbitration, . . . or review of any nature whatsoever." 290 F.3d at 96. The contract also contained a broad arbitration clause, which assigned "all disputes under the agreement to arbitration" in New York. *Id.* The district court concluded that the arbitration panel, in reviewing and revising the Accountants' valuation determination, had exceeded its authority under the agreement, and in affirming the decision of the district court, the Second Circuit noted:

> Although this Court has previously held that a broadly worded arbitration clause committing resolution of all disputes to arbitration satisfied this "clear and unmistakable" standard, . . . we cannot conclude that in this case where a single agreement contains both a broadly worded arbitration clause and a specific clause assigning a certain decision to an independent accountant, that the parties' intention to arbitrate questions of arbitrability under the broad clause remains clear.

290 F.3d at 97 (citing *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir.1996)). The Second Circuit concluded that "[w]e find the presence of both these clauses creates an ambiguity, which, under *First Options*, requires us to assign questions of arbitrability to the district court, not the arbitrator." *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995) ("We conclude that, because the Kaplans did not clearly agree to submit the question of arbitrability to arbitration, the Court of Appeals was correct in finding that the arbitrability of the Kaplan/First Options dispute was subject to independent review by the courts.").

In spite of Plaintiff's reliance on *Katz*, it is easily distinguished from the facts at issue here. Unlike in *Katz*, the parties here have explicitly contracted to leave all issues relating to "to the validity, *interpretation*, *performance* or *enforcement* of this Contract shall be referred to arbitration by three arbitrators as herein provided" (Contract § 14.1.1.3). Thus, the overall

7

question of how the Contract is to be interpreted, and the specific manner in which the Regulatory bodies and the arbitrators are supposed to work with each other, "implicate disputes that fall within Section 14.1.1.3," *Pearl Seas I*, 2011 WL 577333 at *9, and is therefore  a question of interpretation that is covered by the arbitration clause. Even if that were not the case, the *Katz* decision, and the *First Options* Supreme Court decision on which it relied, both involved motions to vacate a *final* arbitration award.[2] Here, the arbitrators have yet to issue their final award.

> B.      The Court's Authority to Review Arbitration Decisions prior to the Issuance of a Final Award

"Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, a district court does not have the power to review an interlocutory ruling by an arbitration panel." *Michaels v. Mariforum Shipping, S. A.*,  624 F.2d 411, 414 (2d Cir. 1980). The Second Circuit in *Michaels* further specified:

> The language of the Act is unambiguous: it is only after an award has been made by the arbitrators that a party can seek to attack any of the arbitrators determinations in court, by moving either to vacate the award, . . . or to modify or correct it, . . . Thus, . . . a district court is without authority to review the validity of arbitrators' rulings prior to the making of an award. Where, as here, arbitrators make an interim ruling that does not purport to resolve finally the issues submitted to them, judicial review is unavailable.

624 F.2d at 414.

---

[2] As discussed above, in *Katz*, the arbitration panel "ultimately took jurisdiction over the [valuation] dispute and declared the accountants' determination flawed, computing a new *Final* Share Purchase Price $607,000 higher than the accountants' figure." 290 F.3d at 96.

There are two recognized exceptions to the finality requirement: first, where an award "finally and conclusively disposed of a separate and independent claim and was subject to neither abatement nor set-off," even where that award did not dispose of all the claims that were submitted to arbitration, *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir.1986), and second, for explicitly bifurcated proceedings, *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191 (2d Cir. 1991). As discussed in the Court's February and August 2011 rulings, neither exception applies here. *Pearl Seas I*, 2011 WL 577333, at *8; *Pearl Seas II*, 2011 WL 3475469, at *4.

Plaintiffs maintain that the *Michaels* decision and finality rule is inapplicable to the matter at issue, because "the only relevant issues in Pearl Seas' complaint are specifically carved out from the arbitrator's jurisdiction." (Pl.'s Mem. Opp'n at 16 n.2) Defendants argue, however, that the issue is not the "carve out" in section 14.1.1.2 of the Contract, but whether sections 14.1.1.2 and 14.1.1.3 confer any decision–making power on the Court while the arbitration continues.

The Court concludes that as there has not yet been a final arbitral award, it cannot reach the issue of whether Lloyd's Register and the Marshall Islands' "final" decisions as to compliance and certification have actually been made. Further, because the arbitrators have not issued their final award, the Court would be making a determination of the "scope of the arbitrators' jurisdiction over regulatory issues and on the status of the regulatory approvals" (*see* Pl.'s Mem. Opp'n at 16), based on an incomplete record.

C.      The Disposition of the Case

Under 9 U.S.C. § 3, a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." This mandate to stay the action also includes the right to dismiss the action. *See Bimota SPA v. Rousseau*, 628 F. Supp. 2d 500, 506 (S.D.N.Y. 2009) ("All courts of which we are aware have followed the rule that, '[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.'") (quoting *Rubin v. Sona Int'l Corp.*, 457 F. Supp.2d 191, 198 (S.D.N.Y.2006)) (internal quotation marks and citations omitted). Because the Court has determined that the relief that Plaintiff seeks is not justiciable, the Defendant's motion to dismiss is granted, and the case is dismissed without prejudice.[3]

---

[3] Dismissal renders an order appealable under 9 U.S.C. § 16(a)(3), while the granting of a stay is an unappealable interlocutory order under § 16(b). *Salim Oleochemicals v. M/V SHROPSHIRE,* 278 F.3d 90, 93 (2d Cir. 2002).

III.     Conclusion

        For the reasons discussed above, ISI's motion [Doc. # 33] to dismiss is GRANTED

and the case is dismissed without prejudice. The clerk is directed to close the case.

                                IT IS SO ORDERED.


                                _____/s/_____
                                Janet Bond Arterton, U.S.D.J.

                Dated at New Haven, Connecticut this 30th day of March, 2012.

11